# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

GOVERNMENT OF THE UNITED STATES )
VIRGIN ISLANDS; DEPARTMENT OF )
PLANNING AND NATURAL RESOURCES; and )
COMMISSIONER DEAN C. PLASKETT, IN )
HIS CAPACITY AS TRUSTEE FOR NATURAL )
RESOURCES OF THE TERRITORY OF THE )     Civil No. 2006-170
UNITED STATES VIRGIN ISLANDS, )
)
          Plaintiffs, )
)
          v. )
)
VULCAN MATERIALS COMPANY; THE DOW )
CHEMICAL COMPANY; HOYT CORPORATION; )
COOPER INDUSTRIES, LLC; ALLIANCE )
LAUNDRY SYSTEMS, LLC; BOWE TEXTILE )
CLEANING USA INC.; HILL EQUIPMENT )
COMPANY, INC.; DONINI INTERNATIONAL )
SPA; and JOHN DOES 1-10, )
)
          Defendants. )
_____)

ATTORNEYS:

**John K. Dema, Esq.**
St. Croix, U.S.V.I.
     *For the plaintiffs.*

**Gordon C. Rhea, Esq.**
Mt. Pleasant, SC
     *For the plaintiffs.*

**Douglas C. Beach, Esq.**
**Carol Ann Rich, Esq.**
St. Thomas, U.S.V.I.
     *For defendant Vulcan Materials Company.*

**Richard H. Hunter, Esq.**
St. Croix, U.S.V.I.
     *For defendant The Dow Chemical Company.*

**Andrew C. Simpson, Esq.**
St. Croix, U.S.V.I.
    *For defendant Hoyt Corporation.*

**Britain H. Bryant, Esq.**
St. Croix, U.S.V.I.
    *For defendant Cooper Industries, LLC.*

**John H. Benham, III, Esq.**
St. Croix, U.S.V.I.
    *For defendant Alliance Laundry Systems, LLC.*

**Kevin L. Keller, Esq.**
**Patrick D. Blake, Esq.**
Norfolk, VA
    *For defendant Bowe Textile Cleaning USA, Inc.*

**Stefan B. Herpel, Esq.**
St. Thomas, U.S.V.I.
    *For defendant Hill Equipment Company, Inc.*


## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is a pleading filed by the plaintiffs in this matter, Government of the United States Virgin Islands; Department of Planning and Natural Resources (the "DPNR"); and Dean C. Plaskett, Commissioner of the DPNR in his capacity as Trustee for Natural Resources of the Territory of the United States Virgin Islands (collectively referred to as the "Plaintiffs").  That pleading, styled as a "Suggestion to Dismiss," invites this Court to dismiss this matter without prejudice for lack of subject-matter jurisdiction.

# I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

This action arises from the contamination of the Tutu Wells Aquifer (the "Aquifer"), which was, at one time, a significant source of drinking water for residents of St. Thomas, U.S. Virgin Islands. In the late 1980s, testing revealed elevated levels of certain chemicals that made the Aquifer's water unsuitable for human consumption. In 1995, the United States Environmental Protection Agency (the "EPA") put the Aquifer on the National Priorities List of severely-contaminated sites.

On August 5, 1996, the EPA issued a Record of Decision, in which it set forth a strategy to clean up the Aquifer pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675. After consultations with the EPA, the DPNR approved the federal clean-up plan.[1] That clean-up plan is still underway.

In December, 2005, the Plaintiffs initiated this action against Vulcan Materials Company; the Dow Chemical Company; Hoyt Corporation; Cooper Industries, LLC and/or Alliance Laundry Systems, LLC, as successors-in-interest to McGraw-Edison; Bowe Textile Cleaning USA, Inc.; Hill Equipment Company, Inc.; Donini International Spa; and unidentified John Does 1-10 (collectively

---

[1] CERCLA requires state participation in a federally-initiated clean-up plan. *See* 42 U.S.C. § 9621(f).

referred to as the "Defendants"). The Plaintiffs allege that the Defendants' tortious conduct caused the contamination of the Aquifer. The Complaint asserts only territorial law claims. Those claims are based on (1) negligence, (2) strict liability, and (3) public nuisance. The Plaintiffs seek unspecified monetary damages, and invoke the Court's jurisdiction pursuant to 28 U.S.C. § 1332.

The Plaintiffs have filed a pleading styled as a "suggestion of dismissal," recommending that this action be dismissed without prejudice pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.[2] The Plaintiffs contend that the Government of the Virgin Islands is not a "citizen" of a state for the purpose of establishing diversity-of-citizenship jurisdiction pursuant to 28 U.S.C. § 1332. The Plaintiffs further contend that there is no other basis upon which to invoke this Court's jurisdiction.

The Defendants have filed an opposition, arguing in the alternative that (1) the Plaintiffs' claims are "inextricably tied" to CERCLA, and thus that this Court has original jurisdiction over those claims pursuant to 28 U.S.C. § 1331; or

---

[2] Rule 12(h)(3) provides:

If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

FED. R. CIV. P. 12(h)(3).

(2) jurisdiction is appropriate in this Court because the Plaintiffs' claims are completely preempted by CERCLA.

## II. <u>ANALYSIS</u>

### A. Federal Question Jurisdiction

It is axiomatic that a federal court may not exercise authority over a case for which it does not have subject-matter jurisdiction. Fᴇᴅ. R. Cɪᴠ. P. 12(h)(3); *Brown v. Francis*, 75 F.3d 860, 866 (3d Cir. 1996). Here, the parties do not dispute that this Court does not have diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332. *See* (Pls.' Suggestion of Dismissal 1, Defs.' Resp. to Pls.' Suggestion to Dismiss for Lack of Diversity Jurisdiction 1.) Thus, there must be some other independent basis for the exercise of jurisdiction. *See Warren E. Brown Tenants' Council v. Virgin Islands Housing Authority*, Civ. No. 377-79, 1980 U.S. Dist. LEXIS 8936, at *3 (D.V.I. June 3, 1980), *cited with approval in Government of Virgin Islands v. Sun Island Car Rentals, Inc.*, 819 F.2d 430, 432 (3d Cir. 1987). The Defendants contend that even if this Court lacks diversity jurisdiction, the Plaintiffs' territorial claims raise substantial questions of federal law, and thus support federal question jurisdiction under 28 U.S.C. § 1331.

To determine whether a case arises under federal law, courts must look to the plaintiff's well-pleaded complaint. *U.S. Express*

*Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002). A case arises under federal law if a right or immunity created by the Constitution or laws of the United States is an essential element of the plaintiff's cause of action. *Christianson v. Colt Ind. Operating Corp.*, 486 U.S. 800, 809 (1988). For jurisdictional purposes, the Court does not concern itself with the question whether a plaintiff will ultimately be successful on the merits of his claims. *See id.* (citing *Bell v. Hood*, 327 U.S. 678, 681-82 (1946)). Rather, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)).

Here, the complaint asserts only territorial-law claims. The Defendants contend that this Court nevertheless has federal question jurisdiction over those territorial-law claims based on a variety of federal question jurisdiction long recognized by the Supreme Court. That type of federal question jurisdiction exists over a state-law claim where the state claim "necessarily depends on resolution of a substantial question of federal law."

*Franchise Tax Board v. Construction Laborers Vacation Trust*, 463
U.S. 1, 27-28 (1983).  It is not enough that the court may have
to interpret federal laws or regulations.  Rather, "the
vindication of a right under state law [must] turn[] on some
construction of federal law." *Merrell Dow Pharmaceuticals Inc. v.
Thompson*, 478 U.S. 804, 808 (1986).  To determine whether a
district court has federal question jurisdiction over a state-law
claim, a three-part test applies.  The Court must inquire (1)
whether the state-law claim necessarily raises a federal issue;
(2) whether the federal issue is "actually disputed" and
"substantial"; and (3) whether the exercise of federal
jurisdiction would disturb "any congressionally approved balance
of federal and state judicial responsibilities." *Grable & Sons
Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308,
314 (2005).

In *Grable & Sons Metal Products, Inc. v. Darue Engineering &
Mfg.*, 545 U.S. 308 (2005), the Supreme Court was confronted with
this seminal jurisdictional question.  In that case, the
plaintiff owned real property that the Internal Revenue Service
(IRS) seized to satisfy a federal tax deficiency. 545 U.S. at
310.  The plaintiff received notice of the seizure by certified
mail before the IRS sold the property to the defendant. *Id.*  Five
years later, the plaintiff sued the defendant in state court to

quiet title.  The plaintiff asserted that the defendant's record

title was invalid because the IRS had conveyed the seizure notice

improperly. *Id.* at 311.  The governing statute, 26 U.S.C. §

6335(a), provides that "notice in writing shall be given . . . to

the owner of the property . . . or shall be left at his usual

place of abode or business . . . ."  The plaintiff maintained

that § 6335(a) required personal service, not service by

certified mail. *Id.*  The defendant removed to district court,

invoking jurisdiction under 28 U.S.C. § 1331 on the ground that

the plaintiff's claim of title depended on the interpretation of

§ 6335(a).  The Supreme Court affirmed the district court's

conclusion that removal was proper, reasoning that whether the

plaintiff received notice adequate under § 6335(a) was "an

essential element of [the plaintiff's] quiet title claim." *Id.* at

315.

> The *Grable* Court acknowledged that
>
>> for nearly 100 years . . . in certain cases federal
>> question jurisdiction will lie over state-law claims
>> that implicate significant federal issues.  The
>> doctrine captures the commonsense notion that a federal
>> court ought to be able to hear claims recognized under
>> state law that nonetheless turn on substantial
>> questions of federal law, and thus justify resort to
>> the experience, solicitude, and hope of uniformity that
>> a federal forum offers on federal issues.

*Grable*, 545 U.S. at 312.  The Supreme Court cautioned that it has

"never treated 'federal issue' as a password opening federal

courts to any state action embracing a point of federal law." *Id.*
at 314. Rather, the question is, "does a state-law claim
necessarily raise a stated federal issue, actually disputed and
substantial, which a federal forum may entertain without
disturbing any congressionally approved balance of federal and
state judicial responsibilities." *Id.* Based on these principles,
the *Grable* Court reasoned that "the meaning of the federal tax
provision was an important issue of federal law that sensibly
belong[ed] in a federal court." *Id.* at 315.[3]

The Supreme Court revisited *Grable* in *Empire Healthchoice
Assur., Inc. v. McVeigh*, 126 S.Ct. 2121 (2006). In *Empire*, the
Supreme Court concluded that the action, which had originally
been filed in district court, presented no "substantial" federal
question under the well-pleaded complaint rule. In that case, a
federally-funded health plan sued one of its members in district

---

[3] This is so, the *Grable* Court reasoned, because the government

has a strong interest in the "prompt and certain collection of
delinquent taxes," and the ability of the IRS to satisfy its
claims from the property of delinquents requires clear terms of
notice to allow buyers like [the respondent] to satisfy themselves
that the Service has touched the bases necessary for good title.
The Government thus has a direct interest in the availability of a
federal forum to vindicate its own administrative action, and
buyers (as well as tax delinquents) may find it valuable to come
before judges used to federal tax matters. Finally, because it
will be the rare state title case that raises a contested matter
of federal law, federal jurisdiction to resolve genuine
disagreement over federal tax title provisions will portend only a
microscopic effect on the federal-state division of labor.

545 U.S. at 315 (internal quotations and citations omitted).

court, invoking jurisdiction pursuant to 28 U.S.C. § 1331.  The

plaintiff health plan sought to recover medical expenses it had

paid when the defendant plan member received a settlement from a

tort action in state court. *Id.* at 2128.  The plan member moved

to dismiss for lack of subject-matter jurisdiction, arguing that

no federal question was present. *Id.*  The district court

dismissed the action. *Id.*

The Supreme Court affirmed that dismissal, holding that the

case did "not fit within the special and small category" provided

by *Grable*. *Id.* at 2136.  While the Court agreed with the

government's argument that a "substantial" federal question

existed because the government "has an overwhelming interest in

attracting able workers to the federal workforce," and "in the

health and welfare of the federal workers upon whom it relies to

carry out its functions," the Court nevertheless concluded that

those interests "do not warrant turning into a discrete and

costly 'federal case' an insurer's contract-derived claim to be

reimbursed from the proceeds of a federal worker's

state-court-initiated tort litigation." *Id.*

In this matter, the Plaintiffs' claims are more akin to

those in *Empire* than those in *Grable*.  In *Grable*, the Court was

required to interpret a federal law to rule on the state-law

claim.  Here, in contrast, no such interpretation is necessary to

decide the Plaintiffs' territorial-law claims.  Accordingly, while the Plaintiffs' territorial-law claims bear some relation to federal issues in the sense that those claims arise out of a federally-supervised contaminated site, they do not raise an actually-disputed and substantial issue concerning CERCLA.

Accordingly, the Court finds that there is no federal question upon which to base jurisdiction in this Court pursuant to 28 U.S.C. § 1331. *See*, *e.g.*, *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 310 (3d Cir. 1994) (finding no federal question where the complaint merely alluded to a federal contract); *City Nat'l Bank v. Edmisten*, 681 F.2d 942, 945 (4th Cir. 1982) (finding no federal question where the plaintiff banks' challenge to North Carolina's application of usury laws, while incorporated into the National Bank Act, did not turn on a question of federal law); *Standage Ventures v. Arizona*, 499 F.2d 248, 250 (9th Cir. 1974) (deeming no federal question to exist where "the real substance of the controversy . . . turns entirely upon disputed questions of law and fact relating to compliance with state law, and not at all upon the meaning or effect of the federal statute itself").

## B.   Complete Preemption

The Defendants also contend that jurisdiction over the Plaintiffs' purely territorial-law claims is appropriate in this

Court on the ground that those claims are completely preempted by CERCLA.

As noted above, under the "well-pleaded complaint" rule, federal question jurisdiction only exists where an issue of federal law appears on the face of the complaint. *Scheibler v. Highmark Blue Shield*, 243 Fed. Appx. 691, 693 (3d Cir. 2007). However, when a purportedly state-law claim comes within the scope of an exclusively federal cause of action, it necessarily arises under federal law, and is completely preempted. *Id.* (internal quotations and citations omitted).

The doctrine of complete preemption applies only when two circumstances are present: (1) when the enforcement provisions of a federal statute create a federal cause of action vindicating the same interest that the plaintiff's cause of action seeks to vindicate; and (2) when there is affirmative evidence of a congressional intent to permit such actions in federal court despite the plaintiff's exclusive reliance on state law. *Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90, 93 (3d Cir. 1989) (citing *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie Railroad Co.*, 858 F.2d 936, 942-43 (3d Cir. 1988)). In the absence of explicit direction from Congress, courts should be reluctant to find that the "extraordinary pre-emptive power necessary for the complete preemption doctrine" applies. *Railway Labor Executives*

*Ass'n*, 879 F.2d at 940-41 (internal quotations and citation omitted).

Therefore, the Court must determine whether CERCLA provides a federal cause of action vindicating the same interests sought to be vindicated by the claims against the Defendants in the Plaintiffs' complaint.

All three counts in the complaint, though asserting different theories of liability, seek to recover damages for injuries caused to Virgin Islands natural resources.

CERCLA provides a comprehensive mechanism for the cleanup of hazardous waste and primarily aims to enable the efficient cleanup of hazardous waste and ensure that cleanup costs are borne by responsible parties. *See Burlington Northern and Santa Fe Ry. Co. v. United States*, --- U.S. ---, 129 S.Ct. 1870, 1874 (2009). Section 113(b) of CERCLA provides that "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter[.]" 42 U.S.C. § 9613(b).

CERCLA imposes liability for costs of remedial action as well as for "damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss. . . ." *Id.* at 9607(a)(4)(C). CERCLA also provides a federal cause of action for contribution

claims against parties who are liable or potentially liable under the statute. *See id.* at § 9613(f)(1).[4] Significantly, only "covered persons" as defined by the statute, commonly referred to as potentially responsible parties ("PRPs"), are subject to liability for cleanup costs, damages, or contribution under CERCLA. *See id.* at §§ 9607(a), 9613(f)(1).

Title 42 U.S.C. § 9607(a) ("Section 9607(a)") sets forth the following categories of PRPs under CERCLA:

> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for

---

[4] Section 113(f)(1) provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1).

> disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance[.]

42 U.S.C. § 9607(a).

Here, the Plaintiffs do not allege that the Defendants owned or operated any facilities or vessels. They also do not allege that the Defendants "arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances." Moreover, there is no allegation that the Defendants "accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites[.]" Rather, the Plaintiffs allege that the Defendants were manufacturers and suppliers of the PCEs that caused the contamination of the Aquifer, or were manufacturers and suppliers of dry-cleaning equipment that used the contaminating PCEs.

While such manufacturers or suppliers may be considered to be PRPs if they otherwise fall within one of the four categories of "covered persons" listed in Section 107 of CERCLA, the Court

is unaware of any statutory or other authority holding that an entity may be liable under CERCLA based solely on the fact that it manufacturers or supplies hazardous substances or equipment that uses such substances. To the contrary, "[i]t is clear that Congress did not intend CERCLA to target legitimate manufacturers or sellers of useful products." *Dayton Indep. School Dist. v. U.S. Mineral Prod. Co.*, 906 F.2d 1059, 1065 (5th Cir. 1990).

In *Burlington Northern and Santa Fe Ry. Co. v. United States,* --- U.S. ---, 129 S.Ct. 1870, 173 L.Ed.2d 812 (2009), the Supreme Court of the United States addressed the issue of whether a manufacturer of hazardous substances was a PRP under CERCLA. In that case, an agricultural chemical distributor (the "Distributor") conducted operations on a parcel of land in California. As part of its business, the Distributor purchased and stored various hazardous chemicals, including a chemical known as D-D, which it purchased from Shell Oil Company ("Shell"), the manufacturer of D-D. The California Department of Toxic Substances Control and the EPA (together, the "Governments") investigated the operations of the Distributor and discovered significant soil and ground water contamination. The Governments exercised their CERCLA authority to clean up the contamination. Thereafter, the Governments commenced an action under CERCLA for reimbursement of costs incurred in the

investigation and cleanup of the contaminated land.[5]  Following a
lengthy bench trial, the district court ruled in favor of the
Governments, finding that Shell was liable under CERCLA because
it "arranged for" the disposal of hazardous substances through
its sale and delivery of D-D. *See* 42 U.S.C. § 9607(a)(3).

The United States Court of Appeals for the Ninth Circuit
affirmed, reasoning that while Shell was not a traditional
"arranger" under Section 9607(a)(3), it could nonetheless be
liable under a "'broader' category of arranger liability, in
which disposal of hazardous wastes [wa]s a foreseeable byproduct
of, but not the purpose of, the transaction giving rise to PRP
status." *United States v. Burlington Northern and Santa Fe Ry.
Co.,* 520 F.3d 918, 948 (9th Cir. 2008).  Applying that test, the
Ninth Circuit concluded that Shell had arranged for the disposal
of a hazardous substance through its sale and delivery of D-D
because

> Shell arranged for delivery of the substances to
> the site by its subcontractors; was aware of, and
> to some degree dictated, the transfer
> arrangements; knew that some leakage was likely
> in the transfer process; and provided advice and
> supervision concerning safe transfer and storage.
> Disposal of a hazardous substance was thus a
> necessary part of the sale and delivery process.

---

[5]  The Governments' case was consolidated with an action
brought by the railroads that owned the contaminated land for
contribution against the facility's owner and operator.  However,
analysis of that case is not relevant for present purposes.

*Id.* at 950.

The Supreme Court disagreed. The Court explained that "[i]t is plain from the language of the statute that CERCLA liability would attach under [Section] 9607(a)(3) if an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance." 129 S.Ct. at 1878. It further explained that "[i]t is similarly clear that an entity could not be held liable as an arranger merely for selling a new and useful product if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination." *Id.* However, the Court acknowledged that, in cases falling between those two extremes, the determination of whether a manufacturer qualifies as a PRP may be less clear. *See id.* at 1879. The *Burlington* Court explained that, because CERCLA does not define the phrase "arrange for," it must be given its ordinary meaning. *See id.*

"In common parlance, the word 'arrange' implies action directed to a specific purpose." *Id.* Thus, the Supreme Court held that, "under the plain language of the statute, an entity may qualify as an arranger under [Section] 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Id.*

Accordingly, the Supreme Court rejected the Governments' argument that

> by including unintentional acts such as 'spilling' and 'leaking' in the definition of disposal,[6] Congress intended to impose liability on entities not only when they directly dispose of waste products but also when they engage in legitimate sales of hazardous substances knowing that some disposal may occur as a collateral consequence of the sale itself.

*Id.* at 1879-80. To that end, the Court explained that,

> [w]hile it is true that in some instances an entity's knowledge that its product will be leaked, spilled, dumped, or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes, knowledge alone is insufficient to prove that an entity "planned for" the disposal, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product. In order to qualify as an arranger, Shell must have entered into the sale of D-D *with the intention* that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in § 6903(3).

*Id.* at 1880 (emphasis supplied). Ultimately, the *Burlington* Court found that Shell could not be held liable under CERCLA based on its status as the manufacturer of D-D and its mere knowledge that spills and leaks of D-D occurred.

The Plaintiffs have not alleged that any of the Defendants sold a product "with the intention" that at least a portion of

---

[6] CERCLA defines the term "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water." 42 U.S.C. § 6903(3); *see also id.* at § 9601(29) (adopting the definition of "disposal" contained in the Solid Waste Disposal Act).

PCE be disposed of when PCE was transferred or equipment was operated. *Id.* The Plaintiffs' mere allegations that the Defendants "failed to prevent" disposal of PCE or that they "knew or had reason to know that their acts or omissions with regard to their products were going to or were substantially certain to result in releases of contaminants" is insufficient to qualify the Defendants as arrangers under *Burlington*. (Compl. ¶¶ 112, 131.) Furthermore, the Plaintiffs have failed to assert that any defendant owned or operated a disposal vessel or facility or transported PCE for disposal. Because the Defendants therefore do not constitute "covered persons" under the statute, the Plaintiffs' claims against the Defendants do not implicate CERCLA. As CERCLA does not create a federal cause of action vindicating the same interest that the Plaintiffs seeks to vindicate here, the first prong of the complete preemption test is not satisfied. Accordingly, the doctrine of complete preemption cannot provide a basis for this Court's jurisdiction.

## III. <u>CONCLUSION</u>

For the reasons stated above, this Court lacks jurisdiction to hear the claims raised in this matter. Consequently, this action will be dismissed without prejudice. *See*, *e.g.*, *Siravo v. Crown, Cork & Seal Co.*, No. 07-2236, 2007 U.S. App. LEXIS 28275,

at *8-9 (3d Cir. Dec. 6, 2007) ("Where a district court lacks

subject-matter jurisdiction, its disposition of such a case will

be without prejudice.") (internal quotations and citation

omitted).  An appropriate order follows.


S\_____
**Curtis V. Gómez**
**Chief Judge**